Theodore G. **DALEY,** as Secretary-Treasurer of Local Union No. 445, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Plaintiff,

v.

Frank E. **FITZSIMMONS,** as General President of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendant.

No. 74 Civ. 3977 (MP).

United States District Court,
S. D. New York.

Nov. 12, 1974.

Friedlander, Gaines, Cohen, Rosenthal & Rosenberg, New York City, for plaintiff; Joseph S. Rosenthal, and David Kramer, New York City, of counsel.

Dickstein, Shapiro & Morin, Washington, D.C., for defendant; Robert J. Higgins, Robert M. Baptiste, Labor counsel, International Brotherhood of Teamsters, Washington, D.C., David Previant, of counsel.

Conrad P. Sheehan, New York City, for intervenor Vincent Refino; John J. Sheehan, New York City, of counsel.

OPINION

POLLACK, District Judge.

I.

This is a suit for injunctive and declaratory relief brought under Section

301(a) of the Labor Management Relations Act, as amended, 29 U.S.C. § 185(a), by the Secretary-Treasurer of a local teamsters' union against the General President of the national labor organization with which the Local is affiliated.

The object of the suit is to prevent the General President from taking original jurisdiction over and thereby preempting pending local administrative proceedings. The Secretary-Treasurer of the Local has been charged by six of its members with official misconduct and he has made countercharges of a similar nature against one of his accusers, a Business Agent and Trustee of the Local. The charging members and the Business Agent requested the General President to take jurisdiction over the disputes and he notified the parties that he had taken such jurisdiction. This suit followed.

Plaintiff applied for a temporary restraining order and the parties stipulated to take no action until a trial could be had of the factual issues involved. Pursuant to Fed.R.Civ.P. 65(a)(2) the Court then ordered the trial of this action on the merits to be advanced and consolidated with the evidentiary hearing ordered to be held on the application for a preliminary injunction.

Shortly after September 11, 1974 when this suit was filed, Vincent Refino, the Business Agent and Trustee previously mentioned, filed[1] a suit under 29 U.S.C. § 411(a)(5) seeking restoration to local membership and to his office from both of which he had been suspended pending an administrative hearing before a local administrative tribunal on the Local's charges of misconduct against him. Refino sued for immediate reinstatement, back pay and punitive damages. Before Refino filed his suit, there already had been preliminary local administrative action taken against him by the Local Executive Council from which he had appealed to the regional body, the Joint Council. Hearings were set for September 4 on his appeal to the Joint Council from his suspension and on September 6 before the Local on the substantive charges against him. However, before those dates, on August 28, Refino requested the General President to take original jurisdiction over his matters and the General President acceded on August 30, thereby presumably suspending the Local and Joint Council hearings. When Refino did not appear before the Joint Council it dismissed his appeal and he then appealed that dismissal to the national organization's General Executive Board; that appeal is pending.

Additionally, on September 25, 1974 Refino applied to this Court for a temporary mandatory order restoring him to his official position, to salary therefrom and to union membership. After hearing this application and on a balancing of the conveniences and equities, such temporary relief was denied. Refino was, however, given leave to participate as an intervenor in the trial of the primary (this Daley) action, and he has done so.

The pretrial deposition of Frank Fitzsimmons, the General President of the national organization, was taken by the plaintiff and the parties proceeded to trial. This Court has, in essence, been asked to decide a question of construction involving the constitution of the national labor organization in a dispute between it and its affiliated local union.

For the reasons stated below, the relief sought by the plaintiff herein and by Refino in his companion suit are each denied and their respective complaints dismissed. The plaintiff herein and Refino are properly before the General President of the national organization on his assertion of original jurisdiction for administrative resolution of the charges and countercharges and Refino's demands for reinstatement and other relief.

1. Sept. 23, 1974.

## II.

The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereafter "IBT") is an unincorporated association functioning as a labor union in the United States and Canada, representing workers in various fields of industry including, *inter alia*, workers in the trucking industry. It is governed by the provisions of its Constitution adopted at its duly constituted General Convention held in July 1971. Frank E. Fitzsimmons is the duly elected General President of IBT.

IBT Local Union No. 445 ("Local 445") is one of over 800 local unions affiliated with the IBT and has been granted a charter by the latter authorizing it to act as a local union and an affiliate of the IBT.

Theodore G. Daley is the Secretary-Treasurer and the principal officer of Local 445. He is currently charged by six members of his local union with the improper disbursement of union funds. Daley has also been charged by seven members of Local 445 with the improper expenditure and/or approval of union funds in connection with certain trips to Florida.

Refino, a Trustee and elected Business Agent of Local 445, was charged on July 31, 1974 by Daley with various offenses against the union including misappropriation of union funds. These charges were filed with the Executive Board of Local 445 on July 31, 1974 at a meeting at which Refino was present and voting and the Board in pursuance of one of its by-laws, immediately upon the charge being filed, ordered the immediate suspension of Refino pending the trial of the issues which was scheduled for September 6, 1974. Article 21(d) of the by-laws of Local 445 reads:

Immediately upon any charge being filed pursuant to subsection b. herein, the Executive Board may order the immediate suspension of the accused member pending a trial of the issues pursuant to this section, and no such member, who is also an employee of this Local Union, will be paid pending such suspension.

On August 2, 1974 Refino appealed to Joint Council 16 of the International Brotherhood of Teamsters which is a regional administrative tribunal for the Greater New York and New Jersey metropolitan areas.

On August 12, 1974 Refino wrote General President Fitzsimmons enclosing the charges filed against him by Local 445 and specifically requested that the General President assume original jurisdiction over those charges. Fitzsimmons was of the view that the IBT Constitution vested exclusively with the General President the authority to remove an officer of the local union from his office pending a hearing and decision and that the bylaws of Local 445 were in conflict with the IBT Constitution. He accordingly requested that Refino be immediately reinstated as Trustee and Business Agent and be compensated for lost earnings. Daley refused to reinstate Refino pending a hearing.

On August 28 the six members of Local 445 who had charged Daley with improper expenditures requested Fitzsimmons to suspend Daley and assert original jurisdiction over those charges. Fitzsimmons refused to suspend Daley. On the same date Refino again asked Fitzsimmons to remove the trial of the charges against him from the jurisdiction of the Local 445 Executive Board. On August 30, Fitzsimmons elected to assert original jurisdiction over the charges filed against Daley and over the charges against Refino and the suspension incident thereto. In the view of the General President the charges involved and related to a situation imminently dangerous to the welfare of Local 445 and were of such magnitude and seriousness as to jeopardize the interests of the membership.

Fitzsimmons purported to act on the authority of Article XIX, Section 10(a)

of the IBT Constitution which provides that whenever charges involving members or officers of local unions:

create, involve or relate to a situation imminently dangerous to the welfare of a local union . . . the General President is empowered, at his discretion, in all cases . . . to assume original jurisdiction in such matter, regardless of the fact that charges have been filed with a subordinate body and are pending. When the General President has assumed such original jurisdiction . . . the jurisdiction of the subordinate body shall cease. . . .

Among other things, Daley contends herein that the General President is disqualified from entertaining original jurisdiction by reason of bias. Similar contentions are made against Daley by the General President and by Refino.

### III.

The specific charges over which IBT General President Fitzsimmons took original jurisdiction are two. The first, filed by Theodore Daley against Refino, charged Refino, *inter alia* with dereliction of his duties and resulting in Refino's suspension by the Executive Board of Local No. 445. The second, filed against Mr. Daley by six members of Local No. 445, not including Vincent Refino but including his brother, alleged misappropriation of funds and grew out of an audit ordered by the IBT of the local's books more than a year ago. The significance of these charges can best be understood in the context of the disputes within the Local and the interplay between the Local and the IBT concerning the audit. Although the following chronology of events may in parts be repetitious of the foregoing, some duplication will aid a full understanding of the scene when the General President stepped in and took over.

The IBT Constitution provides that the books of each of the constituent local unions may be audited once between conventions of the IBT, either by an IBT auditor or by a chartered or certified public accountant. The IBT's General President or General Secretary-Treasurer are authorized to order the audit to be performed by an IBT auditor, and Secretary-Treasurer Miller did order such an audit of the books of Local 445 in April of 1973.

The IBT's auditor, one John Hartigan, questioned some of the expenditures of the Local and demanded to see the minutes of Local No. 445 executive meetings relevant to them. Mr. Daley, in conjunction with other officers of the local refused to produce the minutes, asserting that they were privileged. After a meeting with IBT Secretary-Treasurer Miller on July 27, 1973, Mr. Daley agreed to surrender the minutes. On August 3, 1973, there was a fire in the principal offices of the Local and most of the records sought by auditor Hartigan were asserted by Daley to have been either lost or stolen.

In October 1973, Vincent Refino filed charges with the Local against Daley, alleging that he had refused to make available to Refino documents necessary for Refino to fulfill his obligations as Trustee. These charges were first heard and found adversely to Refino by the Local Executive Council. Refino was notified of the Local's decision in November 1973. He appealed to Joint Council 16, the regional union body, whose Executive Council hears appeals from decisions of charges in member locals. In April 1974, the appeal was decided adversely to Refino. In October 1974, after the institution of this suit, the IBT General Executive Board affirmed the decision of the Joint Council as to these charges.

In November 1973, auditor Hartigan was allowed to see the records of Local No. 445 which were still in existence. He reported to the IBT that several expenditures were left unaccounted for.

In February 1974 the IBT's General Executive Board considered the questioned expenditures and directed Secretary-Treasurer Miller to request that

Daley and other Local members reimburse the Local for any expenditures that could not be justified. In May 1974 Daley informed Miller that one of the expenditures in question, which had resulted from a clerical error, had been reimbursed, and that the others had been ratified by action of the Local Executive Board at a meeting during the course of the audit. In June, Miller wrote Daley that the "authorization" was not sufficient to legitimize expenditures seemingly for members' personal expenses.

On July 3, 1974, Vincent Refino filed new charges against Daley and three other officers alleging interference with his performance of his duty as a trustee. Since those charged constituted a majority of the Local Executive Board, the case was set for hearing before the Joint Council's Executive Board, where it was dismissed in September 1974, when Refino failed to appear. That dismissal has been appealed to the IBT's General Executive Board, and the appeal is pending at the time of this decision.

On July 11, 1974, Miller informed Daley that the IBT General Executive Board had concluded at its July meeting that Local 445 should be placed under trusteeship if the questioned expenditures were not reimbursed to the Local.

On July 15, Daley informed the IBT that the questioned expenditures had been reimbursed,[2] and both IBT General President Fitzsimmons and Secretary-Treasurer Miller accepted Daley's statements at face value, and indicated to Daley that the matter had been resolved to the satisfaction of the IBT.

On July 31, 1974, Daley filed the charges against Refino already mentioned and the Executive Board of Local 445 promptly suspended him from his offices. Refino appealed the suspension to Joint Council # 16.

On August 12, 1974, Refino requested Fitzsimmons to take original jurisdiction over the charges against him and the question of his suspension. Fitzsimmons refused to do so but did attempt to secure Refino's reinstatement, informing Daley that he considered the suspension invalid under the IBT Constitution. Daley refused to reinstate Refino, and on August 28 Refino again requested Fitzsimmons to take original jurisdiction.

On August 14, 1974, six members of Local 445, not including Vincent Refino but including his brother, filed charges against Daley with the Local Executive Board, alleging that he had misappropriated union funds and citing the expenditures questioned earlier by the International's auditor. The six alleged additionally that Daley had not reimbursed the funds as he had reported to the International and that he had wrongfully failed to pay interest to the Local on the funds that he had used. In the time frame of these renewed charges they are, to say the least, suspect as to their merit.

On August 19, 1974, seven members of the Local, again including Refino's brother, filed charges against Daley and others alleging misappropriation of union funds in connection with the expenditures for a trip to Florida made by Daley and two other union members. Since the charges were against a majority of the Local Executive Board, they were brought before the Joint Council.

On August 30, Fitzsimmons announced that he had taken original jurisdiction over the charges by Daley against Refino and the suspension incident thereto and over the August 14th charges by the six members against Daley.

## IV.

"Courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only

---

2. The evidence on the trial was that the former Local President, Mr. Alecca, had co-signed most if not all of the checks used to pay for the questioned expenditures thereby indicating their propriety. Further, the evidence suggests that the repayments were made due to lack or accidental loss of the evidentiary support required by the auditor.

where the official's interpretation is not fair or reasonable." Vestal v. Hoffa, 451 F.2d 706 (6th Cir. 1971), cert. denied, 406 U.S. 934, 92 S.Ct. 1768, 32 L. Ed.2d 135 (1972). It is the province of the International General President to interpret the IBT Constitution between the meetings of the General Executive Board, Art. VI, § 2(a). The question before this Court as it reaches the merits of this dispute is thus not whether Mr. Fitzsimmons' decision was correct, that a situation imminently dangerous to the welfare of the Local and its membership existed, though it finds that it was, but rather whether that decision was fair and reasonable.

It strains credulity to suppose that the petty cash and interest items which seemingly form the basis for the present charges against Mr. Daley would—standing alone—plunge the Local into a situation "imminently dangerous" to itself so as to justify the intervention of the IBT in its affairs. What seems to have happened here is that the grievance that was used to mount the attack of the six against Daley had been blunted by the repayment of the funds involved, to the relief of the IBT which probably thought that the fires generated locally by the audit would die down or even, hopefully, out. But the resentment engendered by the charges filed earlier by Refino broke out in charges filed by Daley against Refino. The elements of those charges were known to Daley for a time prior to his accounting for the personal expenditures challenged by the IBT, but the actual charges came only after Daley and his brother union members had been forced to make repayment.

The IBT was thus faced with internecine warfare in the Local that seemed unlikely to abate on its own and which bids fair to disrupt the interests of the Union membership. At the time of Fitzsimmons' action in taking jurisdiction, Refino's October 1973 charges against Daley were pending on appeal before the IBT's General Executive Board, Refino's July 1974 charges against Daley and three other members of the Local Executive Board were pending before the Joint Council, charges of misuse of union funds by seven members of the Local against a majority of the Local Executive Board were pending before the Joint Council, Daley's charges against Refino and the question of the propriety of his suspension were yet to be decided by the appropriate tribunals, and the charges against Daley by six Local members of failure to pay interest on the funds repaid and their questioning of the actual repayment were yet to be heard by the Local Executive Board. In effect two factions within the Local, one headed by Daley and one apparently led if not controlled by Vincent Refino, appeared to be using the media of charge and countercharge to attempt to resolve their personal antagonisms and probably political aspirations within the union.

While this Court has failed to find a saint in any corner of this dispute, it is sufficiently satisfied that Mr. Fitzsimmons and the IBT acted in good faith and in accordance with their Constitution in assuming original jurisdiction over the disputes involved here.

Plaintiff has from the outset attempted to characterize Fitzsimmons' action as an attack on the leadership of Local 445 motivated by reasons ulterior to the present controversy in the Local. Plaintiff cites as evidence of an independent antagonism that Daley ran for office against Fitzsimmons in the 1971 convention of the IBT. Mr. Daley withdrew after receiving two votes. Local 445 was apparently a party plaintiff in a case in which Mr. Hoffa sought leave to return to the Teamsters union. Local 445 sued the IBT earlier on another question. However, the plaintiff has failed to establish by a fair preponderance of the credible evidence that Mr.

Fitzsimmons was or is prejudiced against Mr. Daley in any disqualifying sense or that original jurisdiction was taken for ulterior purposes or reasons other than the imminent danger perceived by Mr. Fitzsimmons in the brawling and disputes described herein.

The disruption of Local union activities by the feuding of the Local's officers, coupled with the nature of the charges flung by both sides, which seemed calculated to bring the Teamsters bad publicity at the very least, constituted a situation in fact that is "imminently dangerous" within the meaning of Art. XIX, § 10(a) of the IBT Constitution.

Plaintiff's demand for declaratory and injunctive relief is denied and the issues raised herein and with respect to Refino are held to be properly before the General President and, subject to the Constitution, the General Executive Board of the IBT for administrative resolution. Whether Refino properly could be suspended by the Executive Board of Local 445 or only by the General President of the IBT will be moot since the underlying conduct of Refino will be before the General President (Refino invoked the original jurisdiction) to determine on the merits whether Refino should have been and should be suspended by reason of the proof adduced in support of the charges against him—the issue will not turn merely on the construction and applicability of the IBT Constitution or the claim of its overriding effect on the Local's By-Laws.

Since no other relief is sought nor seems justified, this suit is dismissed, without costs. As noted *supra,* Intervenor Refino's related action is governed by these findings and will also be dismissed without costs.

The foregoing shall constitute this Court's findings of fact and conclusions of law as required by Rule 52(a), Fed. R.Civ.P.

So ordered.